No. 44,193

Don Matlack, *Appellant*, v. The City of Wichita, *Appellee*.

(407 P. 2d 510)

Opinion filed November 6, 1965.

*Richard V. Foote*, of Wichita, argued the cause, and *John R. Blair, Don Matlack* and *Ronald H. Rogg*, all of Wichita, were with him on the briefs for the appellant.

*Arthur G. Johnson*, of Wichita, argued the cause, and *John Dekker*, of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This was an action to quiet title to a strip of land condemned by the City of Wichita, Kansas, for the widening of Kellogg Street but claimed not to have been used for such purpose.

The facts which were stipulated will be summarized.

In June, 1950, the City of Wichita condemned various tracts of land including Lots 170 and 172 facing Ida Avenue, belonging to Roger W. Estep and his wife, for the purpose of opening and widening Kellogg Street. The City of Wichita paid the Esteps the full value of the fee. No claim has been made that the price paid was not adequate, neither was the propriety nor the validity of the condemnation proceedings in anyway challenged.

A portion of the two lots was used for widening Kellogg Street, constructing sidewalks and placing poles for street illumination. The City has not occupied the north portion of Lot 170 consisting of a strip 15.2 feet wide facing Ida Avenue and widening to 29.85 feet on the alley to the east but has kept it mowed.

The stipulation further states:

"That other properties along the North side of said Kellogg Street, and, more particularly across the alley to the East of the subject property, were taken in the same condemnation proceeding; that in taking such other properties the City took only parts of the lots involved and did not take the lots in their entirety; that on said other described lots commercial buildings are now located, the same being constructed immediately adjacent to the sidewalk; that the City did not take nor is there now in use on such other lots any parking or other rightofway other than the actual street and the sidewalk immediately adjacent thereto."

.    .    .    .    .    .    .    .    .    .    .    .    .

"That the aforesaid Lots 170 and 172 on Ida, Hunter's Second Addition to the City of Wichita, Sedgwick County, Kansas, were, at the time of the taking by condemnation, occupied as a retail gasoline service station and as such retail gasoline service station the premises were not susceptible of being divided."

In June, 1961, the plaintiff, for a consideration, acquired all of the interest of the Esteps in Lots 170 and 172 by quitclaim deed. Thereafter, on a date not disclosed by the record, plaintiff brought an action to quiet title to the unoccupied strip of land.

The court considered the case on the written stipulation of the parties and rendered judgment for the defendant City.

The plaintiff has appealed.

It is conceded by the appellee, as contended by appellant, that the condemner took only an easement and did not acquire a fee title to the land condemned.

Appellant further contends:

"The second point to be considered here is whether or not the appellee may hold possession of the property in question when it is not and has not been used by the appellee for the purpose for which it was condemned.

.    .    .    .    .    .    .    .    .    .    .    .

"The third point raised by the appellant is that the appellee obtained no right, title or interest which is paramount to the right of the appellant as a result of the condemnation proceedings to the land in question. As set out in the Stipulation of Facts, the appellee has not used this portion of the property condemned for a street."

Surveyed in their entirety appellant's contentions amount to nothing more than the simple assertion that the condemner has lost its easement to the involved portion of the land condemned because it is not presently used for specific street purposes.

It would appear that appellant's contentions are disposed of by the stipulated fact that at the time of the taking by the condemnation proceeding the premises were not susceptible of being divided. It was necessary for the city to condemn and pay the fee value

for the entire tract in order to get the necessary portion. However, under the stipulated facts the contentions of appellant may be readily disposed of by the established law of this state relating to abandonment of condemned easements.

Mere nonuse, for a limited time, of the land condemned for public purposes, unless accompanied by failure to pay compensation, does not constitute abandonment. An easement on land dedicated to or condemned for a public use does not revert to the fee owner unless its use for the dedicated or condemned purpose has become impossible, or so highly improbable as to be practically impossible. (See *McAlphine v. Railway Co.*, 68 Kan. 207, 75 Pac. 73.)

There is nothing in the record to indicate that the use of the land for some street purpose is impossible or even highly improbable.

In *Christman v. City of Wichita, Kan.*, 209 F. 2d 639, the United States Court of Appeals, Tenth Circuit, in considering the Kansas rule, stated:

"Under the law of Kansas, neither misuse nor nonuse will bring about the reverter of property dedicated to a public use. In *Gadarl v. City of Humboldt*, 87 Kan. 41, 123 P. 764, the court held that when title has become vested in a municipal corporation for the public benefit, it cannot be impaired by any inaction or delay on the part of public officials in devoting the property to the uses for which it has been dedicated." (p. 641.)

The same question was also considered in *Harvey v. Railroad Co.*, 111 Kan. 371, 207 Pac. 761, where the following statement appears:

"It was not necessary for the condemnation commissioners in 1879 to limit the amount of land to be condemned for railway purposes to the actual acreage required at that time. In the exercise of their discretion they could look to the future and to the gradually expanding need for switch yards, sidings, workshops and the like, and condemn such amount as seemed reasonable to them. Nor was this any hardship on the owner. He was paid for the land taken; and yet he and his successors in title down to and including the plaintiff have none the less enjoyed the possession, emblements and profits of most of the condemned property for all these years. Of course, so long as the railway company did not need all the property condemned, the successive fee-title holders were strictly within their rights in occupying and using it. . . ." (p. 373.)

What was said in *Gadarl v. City of Humboldt*, 87 Kan. 41, 123 Pac. 764, is applicable here.

"The doctrine of abandonment is the last refuge of those who, like the plaintiff, suffer from unfortunate mistakes regarding the extent of their property rights. It is also the last refuge of the rapacious and the greedy, who are watchful for opportunities to gain private advantage at the public expense. In

its application the doctrine always involves nonuse, misuse, or adverse use. It has been asserted in one form or another, and has been repudiated, in respect to city streets. (citing cases.)" (p. 43.)

For other applicable decisions see *McAlpine v. Railway Co.,* supra; *Burlingame v. Thompson,* 74 Kan. 393, 394, 86 Pac. 449; *DePriest v. City of Salina,* 101 Kan. 810, 812, 168 Pac. 872, and *Swope v. Kansas City,* 132 F. 2d 788.

We also find the rule stated in 30 C. J. S., Eminent Domain, § 458, pp. 660, 661, as follows:

"In the absence of statutory provision, the general rule is that mere nonuser of the property condemned is not sufficient to constitute an abandonment, if for a period less than the statutory period of limitations, unless accompanied by a failure to pay the compensation, or there must be both a nonuser and an intention to abandon. So, a condemnor's failure to occupy its entire easement does not constitute an abandonment of the unused portion. Nonuser, if long continued, is evidence of intent to abandon, and may give rise to a presumption of abandonment. . . ."

See, also, 18 Am. Jur., Eminent Domain, § 124, p. 744.

Appellant places great weight on *Kingman County Comm'rs v. Hufford,* 126 Kan. 106, 266 Pac. 932. What is there said and held is not applicable to the facts in this case. The defendant in that case continued to farm condemned land which had not been used by the county and the county attempted to collect rent. It was held:

"Rule followed that the condemnation of private property for public use does not transfer the title and ownership of the property, and after such condemnation the owner and his tenant may continue to use the property as they see fit, without attorning to any public board or functionary therefor, so long as they do not interfere with the dominant rights in the property vested in the public by the condemnation proceedings." (Syl. ¶ 1.)

The evidence in the case at bar does not establish that the use of the land for which it was condemned has become impossible or highly improbable. Many possible proper future uses can be imagined.

Based on what has been heretofore stated and held we are forced to conclude that the stipulated facts do not establish an abandonment of any part of the easement in controversy because of nonuse.

The judgment is affirmed.